McFADDEN et al. v. UNION ASSUR. SOC. SAME v. LAW UNION & CROWN INS. CO. SAME v. MANCHESTER ASSUR. CO. SAME v. ATLAS ASSUR. CO.

(Circuit Court, E. D. Pennsylvania. December 9, 1901.)

Nos. 64–67.

INSURANCE—ACTION ON POLICIES—EVIDENCE CONSIDERED.

In actions on insurance policies covering "cotton, * * * the property of the assured, * * * or sold but not delivered," while afloat in transitu in any of certain designated ports, but not to cover "goods on which at the time of any fire there may be any marine, inland or transportation insurance," to recover for cotton burned while on a lighter in one of the designated ports being transferred to an ocean steamship, evidence considered, and held not to sustain the defense that at the time of the fire the cotton had been sold and delivered to a purchaser, so as to bring it within the terms of a marine policy held by such alleged purchaser, but to show that it was then the property of the assured, and strictly within the terms of the policies sued on.

At Law. Actions on insurance policies. On motion by defendants for judgment notwithstanding the verdict.

John G. Johnson, for plaintiffs.

Richard C. Dale, for defendants.

DALLAS, Circuit Judge. These are actions on four identical policies of insurance, issued by the respective defendants to the plaintiffs, "on cotton and other vegetable fiber, the property of the assured, or held by the assured in trust or on commission, or on joint account with others, or sold, but not delivered, while contained in all or any of the brick, stone, or frame warehouses, storage stores, and sheds, and while in transitu in or on any of the streets, yards, wharves, piers, and bulkheads, and also while in cars on tracks (excepting in grain elevators) in New York, Brooklyn, Jersey City, Hoboken, and Weehawken, and on Staten Island and Black Tom Island, and while afloat in transitu in the ports of said cities, subject to the following conditions of coinsurance and exceptions named below: * * * This policy does not cover, in whole or in part, goods on which, at the time of any fire, there may be any marine, inland, or transportation insurance." While these policies were in force the plaintiffs caused a considerable quantity of cotton to be taken, on a lighter employed by them, from warehouses in Brooklyn to a pier of the North German Lloyd Steamship Company at Hoboken. The lighter arrived at the pier shortly after noon on June 28th, and made fast thereto near the stern of the steamship Maine, by which the cotton was to be transported to Bremen. The master of the lighter promptly reported to the agents of the ship, and delivered to them the customary papers entitling him to have the cotton accepted for carriage. Thereupon they told him to keep the lighter where she then was, to await the readiness of the vessel to receive the cotton, and accordingly she was retained at the pier until about 1 o'clock p. m. on the 30th of June, when, by direction of the representatives of the ship, a tug supplied by them brought her alongside the Maine, and the transfer of the cotton was then commenced, and was still progressing, when, at about 4 o'clock in the afternoon, a fire broke out upon the steamship, and the cotton, not only that portion of it which had been placed aboard the ship, but also that which was still on the lighter, was consumed. The plaintiffs' claim is only for the loss occasioned by the destruction of the cotton which had not been transferred, and the question for decision is whether that cotton was or was not, in view of the uncontroverted facts, covered by the policies sued on. The several defendants contend that it was not, and, as supporting that contention, their counsel have affirmed, as "the fundamental proposition, that these policies did not cover cotton after its legal delivery to the ocean carrier," and they have argued that what was actually done constituted a delivery to the steamship company, and that, that company being the ocean carrier, delivery to it was, in legal effect, a delivery to one Scheibler, who, as was alleged, had purchased the cotton in question from the plaintiffs. This argument is founded upon the fact that the insurance

was only "on cotton * * * the property of the assured,: *, *. * or sold, but not delivered," and upon the provision of each policy that it should not cover "goods on which at the time of any fire there may be any marine, inland, or transportation insurance," there having in fact been, at the time of the burning of the Maine, an outstanding policy of insurance of the Rheinisch Westfalischer Lloyd, in favor of the said Scheibler, which contained a clause as follows:

"(b) As regards cotton bought by the Baumwoll Manufactur von Carl Scheibler from a shipper in the interior, and the insurance on which the shipper has covered from the interior to the port of shipment, or, in other words, which has not been reported to the Rheinisch Westfalischer Lloyd in M. Gladbach as including country damage, the insurance to commence at the moment the captain of the steamer on which the cotton is to be shipped to Europe has given his receipt, notwithstanding the fact that the cotton is not on board, but on the quay. In either case, the Rheinisch Westfalischer Lloyd in M. Gladbach will not be liable for country damage, neither the interior risk, and while the cotton is being transported by river boats."

The position taken by the defendants has, I believe, been accurately stated. In my opinion, it is untenable. It depends for its support upon the supposed existence of a fact the nonexistence of which has been conclusively established. The cotton in question had not been sold to Scheibler. The plaintiffs had, it is true, sold to him a certain number of unidentified bales, but they had not undertaken to deliver to him this particular cotton, and no title thereto or property therein had, in any manner, been vested in him. It was therefore, at the time of the fire, "the property of the assured"; and, being also "afloat in transitu" in one of the specified ports (a phrase to be read in connection with "wharves, piers, and bulkheads," etc.), it is manifest, I think, that it was within the very terms by which the subject-matter and scope of the insurance were defined.

The same consideration is decisive also of the defense based upon the clause which excluded from the operation of these policies goods on which there might be other insurance; for, of course, if Scheibler was not the owner of this cotton, the policy which he held did not, and could not, cover it.

The conclusion which I have reached upon the point which has been adverted to renders the discussion of any other question unnecessary.

The defendants' motion for judgment notwithstanding the verdict is denied.